UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA M. DOTY,

                          Plaintiff,

v.                                                          1:16-CV-1276
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN NY            MARY MARTHA WITHINGTON, ESQ.
  Counsel for Plaintiff
40 New Street
Saratoga Springs, NY 12866

U.S. SOCIAL SECURITY ADMIN.                     ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Tina M. Doty

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 10, 13.)  For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and

Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision

denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1979, making her 17 years old at the alleged onset date, 34 years old at the application filing date, and 35 years old at the date of the ALJ's decision. Plaintiff reported completing the tenth grade with involvement in special education. The ALJ found she does not have past relevant work. Generally, Plaintiff alleges disability due to left foot problems and atrial fibrillation.

### B.    Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on June 11, 2013, alleging disability beginning April 11, 1997. Plaintiff's applications were initially denied on August 30, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Robert Wright on February 12, 2015. On March 25, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 22-30.)[1] On August 24, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 24-29.) First, the ALJ found Plaintiff was insured for disability benefits under Title II until December 31, 2017. (T. 24.) Second, the ALJ found that Plaintiff has not

---

[1]    The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

engaged in substantial gainful activity since the alleged onset date.  (T. 24.)  Third, the ALJ

found that Plaintiff's left foot plantar fasciitis, plantar fibroma and osteoarthritis, atrial

fibrillation, and vertigo are severe impairments, while her asthma and kidney stones are not

severe impairments.  (T. 25.)  Fourth, the ALJ found that Plaintiff's severe impairments do not

meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the

"Listings").  (T. 25.)  Specifically, the ALJ considered Listings 1.02 (major dysfunction of a

joint) and 4.00 (cardiovascular system disorders).  (*Id.*)  Fifth, the ALJ found that Plaintiff has

the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except she can perform unskilled work with no work at heights and
> no work involving the operation of a motor vehicle or moving
> machinery; the claimant also needs to change positions every thirty
> minutes.

 (T. 26.)  Sixth, the ALJ found that Plaintiff does not have past relevant work.  (T. 28.)  Seventh,

and finally, the ALJ found that Plaintiff remains able to perform a significant number of other

jobs in the national economy such as surveillance system monitor, information and reception

clerk, and election clerk.  (T. 29.)   The ALJ therefore concluded that Plaintiff is not disabled.

### D.      The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes four arguments in support of her motion for judgment on the

pleadings.  First, Plaintiff argues that the ALJ failed to afford proper weight to the opinions from

the treating podiatrist and treating physician.  (Dkt. No. 10, at 15-19 [Pl. Mem. of Law].)  More

specifically, Plaintiff argues that treating physician Veena Goel, M.D., had a longitudinal

relationship with Plaintiff, that treating podiatrist Richard Berkowitz, D.P.M., is a specialist in

the area of treatment and his opinion is supported by the evidence, and that both sources had a

treating relationship with Plaintiff that provided them with motivation to accurately assess

Plaintiff's impairments. (Dkt. No. 10, at 16-17 [Pl. Mem. of Law].) Overall, Plaintiff argues that the ALJ improperly "cherry picked" only the portions of these opinions that supported a finding of non-disability while ignoring the portions that showed greater restriction. (Dkt. No. 10, at 19 [Pl. Mem. of Law].)

Second, Plaintiff argues that the credibility finding is not supported by substantial evidence. (Dkt. No. 10, at 18-19 [Pl. Mem. of Law].) More specifically, Plaintiff argues that the ALJ erred in considering inconsistencies in Plaintiff's reports about the number of hours she worked, in the use of childcare activity as a factor showing greater than alleged abilities, and in failing to properly consider Plaintiff's reports of dizziness and fatigue. (*Id*.) Plaintiff further argues that the ALJ failed to consider the frequency and nature of treatment by Dr. Berkowitz, which included multiple foot debridements and surgery, treatment that she argues substantiates her allegations of debilitating pain. (Dkt. No. 10, at 21 [Pl. Mem. of Law].)

Third, Plaintiff argues that the Step Five finding is not supported by substantial evidence because the hypothetical question posed to the vocational expert (the answer to which the ALJ used to support the Step Five finding) did not include limitations opined by Dr. Berkowitz and Dr. Goel. (Dkt. No. 10, at 21-23 [Pl. Mem. of Law].) Plaintiff also argues that the ALJ did not meet his burden to show a significant number of jobs in the national economy, asserting that two of the three jobs identified by the vocational expert were not present in significant numbers, and that the third would be "available sporadically and unlikely to be filled by a claimant with the diminished RFC presented by plaintiff." (Dkt. No. 10, at 23 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ's decision overall is not supported by substantial evidence due to his errors in weighing the opinion evidence and failing to find Plaintiff's allegations credible. (Dkt. No. 10, at 24-25 [Pl. Mem. of Law].)

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings. First, in response to Plaintiff's first argument, Defendant argues that the ALJ properly assessed and weighed the opinion evidence from Dr. Berkowitz, Dr. Goel, and consultative examiner Kataulya Puri, M.D. (Dkt. No. 13, at 5-10 [Def. Mem. of Law].) Defendant argues that the ALJ correctly determined that the opinions of Dr. Berkowitz and Dr. Goel were inconsistent with Plaintiff's own reported activities, including her part-time work activity, and with the medical evidence. (Dkt. No. 13, at 6-9 [Def. Mem. of Law].) Defendant also argues that the ALJ was not required to adopt the totality of any opinion when determining the RFC. (Dkt. No. 13, at 10 [Def. Mem. of Law].)

Second, in response to Plaintiff's second argument, Defendant argues that the credibility finding is supported by substantial evidence. (Dkt. No. 13, at 10-12 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ did consider Plaintiff's reports of dizziness and fatigue by finding vertigo and atrial fibrillation to be severe impairments and by limiting Plaintiff to no work at heights or with a motor vehicle or moving machinery. (Dkt. No. 13, at 10 [Def. Mem. of Law].) Defendant also argues that the ALJ properly considered inconsistent daily activities and Plaintiff's part-time work that involved an ability to stand and walk that was inconsistent with her allegations. (Dkt. No. 13, at 11-12 [Def. Mem. of Law].)

Third, in response to Plaintiff's third and fourth arguments, Defendant argues that the RFC finding and the Step Five finding are supported by substantial evidence. (Dkt. No. 13, at 12-15 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ met his burden to provide evidence of a significant number of jobs in the national economy that Plaintiff remained able to perform. (Dkt. No. 13, at 14 [Def. Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the Weight Afforded to the Opinion Evidence is Supported By Substantial Evidence and Consistent with Applicable Legal Standards

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 5-10 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan.

23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Plaintiff argues that the ALJ's choice to afford less weight to the opinions from treating physicians Dr. Berkowitz and Dr. Goel is not supported by substantial evidence, and that the ALJ's selective reliance on only the portions of these opinions that were consistent with a finding of sedentary work is improper "cherry picking" of the evidence. (Dkt. No. 10, at 15-19 [Pl. Mem. of Law].) These arguments are not persuasive.

On July 22, 2013, Dr. Berkowitz noted he had been treating Plaintiff for left foot plantar fasciitis and recurring fibromas at a frequency of once per month since September 15, 2008. (T. 286-87.) Dr. Berkowitz opined that Plaintiff was limited to lifting and carrying ten pounds occasionally, standing and walking less than two hours in an eight-hour workday, and was limited in her ability to push and pull. (T. 289-90.) Dr. Berkowitz opined that Plaintiff had no limitation in her ability to sit. (T. 289.) A year later, on July 31, 2014, Dr. Berkowitz opined that Plaintiff's prognosis was poor and that she was limited to standing 15 minutes at one time, standing or walking less than two hours in an eight-hour workday, sitting eight hours in an eight

hour workday, and never lifting any weight or performing postural activities. (T. 306-08.) Dr. Berkowitz further opined that Plaintiff would require unscheduled breaks during the workday for 15 minutes per hour, would experience severe limitations in performing repetitive reaching, handling or fingering, would likely be absent from work more than four days per month due to her impairments and treatment, and would constantly experience symptoms severe enough to interfere with her attention and concentration but would nonetheless remain capable of performing low stress work. (T. 307-09.) The ALJ afforded great weight to Dr. Berkowitz's limitations for lifting and carrying ten pounds occasionally and sitting for an unlimited period of time, finding these limitations were supported by the evidence, including Plaintiff's testimony. (T. 28.) However, the ALJ afforded less weight to the rest of his opined limitations, particularly related to standing, walking and absences, because these were inconsistent with the evidence including Plaintiff's reported activities. (*Id.*)

On January 26, 2015, Dr. Goel noted she had seen Plaintiff sporadically since 2004 and noted that Plaintiff's prognosis was fair. (T. 533.) Dr. Goel opined Plaintiff could sit for 30 minutes at one time, stand for 15 minutes at one time, sit less than two hours total in an eight-hour workday, stand or walk less than two hours total in an eight-hour workday, lift and carry up to ten pounds frequently, frequently twist, occasionally stoop, bend and crouch, and rarely climb. (T. 534-35.) Dr. Goel further opined that Plaintiff would require unscheduled work breaks every one-and-a-half to two hours to change position, would likely be absent two days per month due to her impairments and treatment, and would occasionally experience symptoms severe enough to interfere with her attention and concentration but would nonetheless remain capable of performing moderate stress work. (T. 534-36.) Dr. Goel noted that Plaintiff currently worked as a bottle clerk at a grocery store for four to six hours per shift with no problem. (T. 536.) The

10

ALJ afforded great weight to Dr. Goel's opined limitation for lifting and carrying ten pounds, finding it was supported by the evidence, including Plaintiff's testimony. (T. 28.) However, the ALJ afforded less weight to the rest of the opined limitations because he found they were inconsistent with the evidence including Plaintiff's reported activities. (*Id.*)

As an initial matter, this Court finds that Plaintiff's argument that the ALJ's acceptance of portions of these opinions and rejection of others was improper to be without merit. It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence "to make an RFC finding that is consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (noting also that the ALJ's conclusions do not need to "perfectly correspond" with any of the opinions from medical sources in order to be supported by substantial evidence) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *see also Dirisio v. Comm'r of Soc. Sec.*, No. 5:15-CV-1181, 2016 WL 7378930, at *4 (N.D.N.Y. Dec. 20, 2016) ("In formulating the RFC, an ALJ is not required to adhere to the entirety of one medical source's opinion.") (citing *Matta*, 508 F. App'x at 56)); *Wilburn v. Colvin*, No. 1:15-CV-0058, 2016 WL 1237789, at *4 (N.D.N.Y. Feb. 29, 2016) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into the RFC where he afforded the opinion "significant but not great weight"). The ALJ noted which portions of the opinion he relied on, which he rejected, and the reasons for his treatment of these limitations. (T. 28.) Consequently, the mere fact that the ALJ found some portions of these opinions to be consistent with the evidence as a whole while others were not is not a legal error, but rather a proper execution of the ALJ's duty to weigh all evidence and resolve conflicts.

Additionally, the ALJ provided a good reason supported by substantial evidence for the weight afforded to the opinions from both of these sources, namely that the limitations either

were or were not consistent with the evidence. *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled). The ALJ found that the rejected restrictions opined by Dr. Berkowitz and Dr. Goel were inconsistent with Plaintiff's own reports of activities. (T. 27-28.) In particular, the ALJ noted that Plaintiff was able to perform four-to-six hour shifts as a bottle attendant during the period she alleged being disabled, work that Plaintiff reported involved standing or walking for the totality of a shift and lifting between five-to-ten or 25 pounds, depending on the source of her report. (T. 41, 181.) Although this work activity was not full-time or at the level of substantial gainful activity such that it would provide conclusive proof that Plaintiff is not disabled, it does clearly contradict the opinions from Dr. Berkowitz and Dr. Goel that Plaintiff was unable to stand or walk for even two hours in a workday. Since Plaintiff herself acknowledged that she was able to stand and walk at least two hours and lift at least ten pounds in a work setting, the ALJ's rejection of a more restrictive limitations on these abilities is supported by substantial evidence.

Additionally, the medical evidence, while substantiating the existence of limitations, does not support the level of greater restrictions opined by these sources. Other than instructions to remain non-weightbearing for about two months after a foot surgery in November 2008, there

was no indication of any ongoing medical restriction on Plaintiff's standing or walking ability. (T. 383-96.) Examinations primarily noted an antalgic left gait, some foot and leg edema, foot pain, scarring and kerotic lesions related to prior surgeries, and the presence of a fibroma in her plantar area, but Plaintiff was also routinely observed to have intact sensation, deep tendon reflexes, and strength. (T. 265, 311, 365-81, 522.) Throughout 2013 and 2014, Plaintiff received only conservative care for her foot impairments that involved debridement of lesions, paring of calluses, antibiotic ointment, light compression, and (briefly) a cream that was intended to shrink her fibroma. (T. 365-78.) On August 19, 2014, orthopedist John DiPreta, M.D., noted that there was nothing from a surgical standpoint that would improve her condition and recommended she be treated conservatively with shoe modifications and inserts. (T. 311.) Additionally, although the record does show treatment for atrial fibrillation and vertigo with symptoms including chest pain, lightheadedness, and dizziness, cardiac testing was generally negative or asymptomatic, and the evidence overall does not suggest any greater limitations as a result of these impairments than the ALJ accounted for in the RFC. (T. 228-29, 254, 402-05, 408, 427, 452, 471, 476-78, 481, 507, 527, 531.) There is also no evidence contradicting the ALJ's finding that Plaintiff could sit for at least six hours in an eight-hour workday, and he relied on Dr. Berkowitz's statements supporting that finding. The medical evidence as a whole therefore provides substantial evidence to support the weight the ALJ afforded to the opinions from Dr. Berkowitz and Dr. Goel.

The ALJ's findings are also supported by his notation that he afforded some weight to the opinion from consultative examiner Dr. Puri. (T. 27.) The ALJ found that this opinion supported the existence of exertional limitations, but was not entitled to greater weight because Dr. Puri was not a treating source and did not provide a specific function by function analysis.

(*Id.*)  Nothing in Dr. Puri's opinion that Plaintiff had mild limitations in gait and performance of activities of daily living and moderate limitations in lifting contradict the ALJ's finding that Plaintiff remained able to perform a range of sedentary work.  (T. 303.)

For all the above reasons, the ALJ's findings related to the opinion evidence are supported by substantial evidence.  Further, the evidence as a whole provides substantial support for the RFC finding.  Remand is not warranted on this basis.

### B.      Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 10-12 [Def. Mem. of Law].)  To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588,

591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Plaintiff argues that the credibility finding is deficient based on the ALJ's reliance on factors such as inconsistencies between Plaintiff's reports of the number of hours she worked and her earnings records, and her performance of childcare as evidence contradicting her reported level of limitation.  (Dkt. No. 10, at 18-19 [Pl. Mem. of Law].)  Plaintiff also argues that the ALJ erred in failing to appropriately consider her reports of dizziness and fatigue and the frequency and nature of her treatment with Dr. Berkowitz for her foot impairments.  (Dkt. No. 10, at 19, 21 [Pl. Mem. of Law].)  In finding Plaintiff was not entirely credible, the ALJ noted that the medical treatment evidence did not show signs and symptoms supporting the degree of restriction she alleged, that she had been able to work part-time as a bottle attendant for 12 years despite her combination of impairments, that there was an inconsistency between the number of hours she reported working and her earnings records, and that her allegations were inconsistent with her reported activities including babysitting three young children, caring for pets, preparing meals, cleaning dishes, and doing laundry.  (T. 26-27.)

Plaintiff argues that the ALJ erred in using an apparent inconsistency between the hours Plaintiff reported working as a bottle clerk and the average number of hours that would be suggested by her hourly wage and her total yearly earnings.  (Dkt. No. 10, at 18 [Pl. Mem. of Law].)  However, Plaintiff does not explain why this was an improper consideration, or provide any authority to support her assertion of error.  Rather than being improper, the ALJ is entitled to consider inconsistencies between the testimony and the evidence when determining whether a

claimant is credible. *See Tatum v. Comm'r of Soc. Sec.*, No. 5:14-CV-1567, 2016 WL 770206, at

*7 (N.D.N.Y. Feb. 2, 2016), report and recommendation adopted by 2016 WL 796068

(N.D.N.Y. Feb. 23, 2016) (noting that "[a]bsent a misunderstanding of plaintiff's testimony, an

ALJ may rely on inconsistencies in a plaintiff's testimony in evaluating the plaintiff's

credibility") (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)); *Bodoh v. Colvin*, No. 5:14-

CV-1004, 2015 WL 5512442, at *7 (N.D.N.Y. Sept. 15, 2015) (finding no error in the ALJ's

reliance on inconsistencies in plaintiff's testimony regarding receipt of worker's compensation

benefits, activities of daily living, and work history when making an adverse credibility finding).

Because Plaintiff has not shown that the ALJ's calculations of average hours per week based on

her yearly wages are unreasonable, the ALJ's identification of an inconsistency in Plaintiff's

testimony was a proper consideration when assessing credibility.

Plaintiff also argues that the ALJ should not have used her ability to babysit children

against her credibility because of her testimony that she does very little physically for them.

(Dkt. No. 10, at 18 [Pl. Mem. of Law].)  However, the ALJ did not rely solely on Plaintiff's

childcare activities, but rather cited other daily activities that were reasonably inconsistent with

Plaintiff's alleged level of limitation.  Inconsistencies between her allegations and the level of

ability suggested by reported activities is a proper consideration for the credibility analysis.  *See*

*Morris v. Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14,

2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities

demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted

Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other

evidence.")  Additionally, although Plaintiff argues that the fact she experienced significantly

exacerbated foot pain after working only four-to-six hours as a bottle attendant was an indication

that she would not be able to work a full eight-hour day, she ignores that the RFC limits her to sedentary work involving primarily sitting during a workday, while her work as a bottle attendant is entirely comprised of standing and walking. (T. 26, 181.) Her reports of pain caused by her current work activity therefore do not undermine the ALJ's credibility finding.

Plaintiff's argument that the ALJ ignored the frequency and nature of treatment from Dr. Berkowitz is contradicted by the written decision. In discussing Dr. Berkowitz's treatment relationship, the ALJ noted the following:

> She has been under the care of Richard Berkowitz, DPM, for a number of years. (Exhibits 3F, 6F, 9F). Reports from Dr. Berkowitz indicate that claimant experiences left foot pain of variable intensity as well as periodic swelling and gait abnormality. Dr. Berkowitz periodically debrided her foot lesions and pared callouses on her left foot. (Exhibit 9F). However, examinations regularly indicate that the claimant had no joint problem, normal reflexes and sensation, and full muscle strength in all areas.

(T. 26-27.) The ALJ's discussion therefore shows that he acknowledged the lengthy treatment relationship and appropriately reviewed and considered Dr. Berkowitz's findings and treatment. Plaintiff's argument that the ALJ ignored this evidence when assessing whether Plaintiff's foot condition imposed debilitating pain is unpersuasive.

Lastly, as Defendant notes, the ALJ did not ignore Plaintiff's reports of symptoms such as dizziness and fatigue because he discussed those symptoms in the decision and included limitations in the RFC in an effort to reasonably account for those symptoms. (T. 26-27; Dkt. No. 13, at 10 [Def. Mem. of Law].) To the extent that the ALJ did not discuss the evidence related to these reports and symptoms is great detail, the ALJ is not required to discuss every piece of evidence, and failure to discuss specific evidence does not indicate that an ALJ failed to consider that evidence. *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139, 2015 WL

9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (quoting *LaRock ex. rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005).

The ALJ provided multiple reasons in support of his finding that Plaintiff's allegations were not entirely credible. Consequently, the credibility finding is consistent with the applicable legal standards and supported by substantial evidence. Remand is not merited on this basis.

### C. Whether the Findings at Step Five are Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 12-15 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove she has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)).

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre*, 758 F.3d at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v)). "'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'" *Rosa v. Colvin*, No. 3:12-CV-0170, 2013 WL 1292145, at *9

(N.D.N.Y. Mar. 27, 2015) (quoting *Fox v. Comm'r of Soc. Sec.,* No. 6.02-CV-1160, 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)).

Plaintiff first argues that the hypothetical question posed to the vocational expert, the answer to which was used to support the Step Five finding, was incomplete because it did not contain the greater restrictions opined by Dr. Berkowitz and Dr. Goel. (Dkt. No. 10, at 22-23 [Pl. Mem. of Law].) However, as Defendant notes, this argument is merely repetitive of Plaintiff previous arguments and is unpersuasive since this Court has already concluded that the ALJ did not err in the weight afforded to those sources' opinions.

Plaintiff also argues that the ALJ did not meet his burden because he did not show that a substantial number of jobs existed that Plaintiff could perform. (Dkt. No. 10, at 23 [Pl. Mem. of Law].) Specifically, Plaintiff argues that the numbers of jobs as a surveillance system monitor and information clerk individually do not rise to a significant number, and that election clerk jobs would only be "available sporadically and [would be] unlikely to be filled by a claimant with the diminished RFC presented by plaintiff." (*Id.*) As an initial matter, Plaintiff's assumption that each individual job must exist in significant numbers is not supported by any legal or regulatory authority. Rather, the pertinent question is whether the ALJ can show that a significant number of overall jobs exist in the national economy. In combination, there was an estimated total of 210,650 jobs between the three occupations listed by the ALJ. (T. 29.) Based on the relevant case law, this number certainly constitutes a substantial number for the purposes of Step Five. *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015) (collecting cases in which the specific number of occupations in the regional and national economy provided by the vocational experts were or were not held to be a 'significant number').

Additionally, Plaintiff does not cite to any authority to support that the position of election clerk would be available only sporadically other than her own interpretation of the Dictionary of Occupational Title description of this jobs. (Dkt. No. 10, at 23 [Pl. Mem. of Law].) As Defendant notes, the vocational expert did not make any such qualifications regarding the availability of this job, and Plaintiff has not provided any persuasive evidence that the election clerk job is available only sporadically such that it would not serve as support for the Step Five finding, or that sporadic availability is a criteria that needs to be considered at Step Five. To the extent that Plaintiff argues that more capable people would be hired for such a position rather than her, that is not a consideration in the Step Five analysis. The ALJ need not prove that Plaintiff would be hired for such a job, only that jobs are generally available. *See Gill v. Astrue*, No. 1:10-CV-0985, 2011 WL 4352410, at *14 (N.D.N.Y. Sept. 15, 2011), report and recommendation adopted by 2011 WL 4352719 (Sept. 15, 2011) ("A plaintiff will be found not disabled if the ALJ determines the plaintiff can perform work in the national economy regardless of whether work exists in the immediate area in which plaintiff lives, a specific job vacancy exists for plaintiff, *or plaintiff would be hired if she applied*.") (emphasis added) (citing 20 C.F.R. §§ 404.1566(a)(1)-(3)). Overall, Plaintiff's arguments that the ALJ failed to provide adequate evidence that a significant number of jobs existed are unpersuasive based on the substantial evidence provided by the vocational expert's testimony.

As the ALJ appropriately relied on the vocational expert's testimony to support the Step Five finding, that finding is supported by substantial evidence. Remand is not merited on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 13, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge